**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CATLIN INSURANCE COMPANY, INC.** ) | **CIVIL ACTION** |
| ) | **NUMBER:** |
| ) | **SECTION:** |
| **v.** ) | **MAGISTRATE:** |
| **ST. MARTIN BROWN & ASSOCIATES, LLC AND FAMILY CENTER OF HOPE** ) | |

---

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Catlin Insurance Company, Inc., alleges upon information and belief as follows:

## NATURE OF THE ACTION

1.      This is an action for a declaratory judgment pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 2202, to determine the rights and duties, if any, of Plaintiff Catlin Insurance Company, Inc. as set forth more fully below.  Catlin has been defending St. Martin Brown against the claims of the Family Center of Hope under a reservation of rights; however, Catlin contends it has no obligation to defend or indemnify St. Martin Brown because St. Martin Brown, without Catlin's written consent, breached a condition precedent to coverage under the policy in voluntarily admitting liability and/or assuming liability for its alleged acts, errors or omissions on the Project that have given rise to FCOH's claim against St. Martin Brown. Catlin seeks declaratory relief and repayment of defense costs it has paid.

## JURISDICTION AND VENUE

2.     At all times pertinent herein, Catlin Insurance Company, Inc. ("Catlin") was and is a Delaware corporation having its principal place of business at 3340 Peachtree Road N.E., Suite 2950, Atlanta, Georgia, and was and is authorized to do and doing business as an insurance company in the State of Louisiana.

3.     On information and belief, Catlin alleges that St. Martin Brown & Associates, LLC ("St. Martin Brown") is and, at all times pertinent herein, was a limited liability company organized and existing under the laws of the State of Louisiana, with its principal place of business at 365 Canal Street, New Orleans, Louisiana, and was and is authorized to do and does business in the State of Louisiana.

4.     On information and belief, Catlin alleges that The Family Center of Hope ("FCOH") is and, at all pertinent times herein, was an entity organized and existing under the laws of the State of Louisiana, with its principal place of business at 4422 St. Charles Ave., New Orleans, Louisiana, and was and is authorized to do and does business in the State of Louisiana.

5.     This is an action to determine Catlin's obligations to St. Martin Brown with respect to the dispute between St. Martin Brown and FCOH arising out of St. Martin Brown's agreement to serve as the architect for certain renovations of a community life center in New Orleans, Louisiana.

6.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) in that this is a civil action between parties of different states where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7.     Venue is appropriate in the United States District Court for the Eastern District of Louisiana because St. Martin Brown and FCOH are residents of

this district as set forth above, and a substantial part of the events giving rise to the claim occurred in this judicial district.

## GENERAL ALLEGATIONS

### The Insurance Policies

8.      Catlin issued to St. Martin Brown a Professional and Pollution Legal Liability Insurance Policy No. AED-199467-1211, effective December 9, 2010 to December 9, 2011, and providing coverage subject to all policy terms and conditions of $1 million each claim and $2 million in the aggregate, with a $20,000 per claim deductible (the "Catlin Policy" or "Policy").   The Catlin Policy is attached hereto as Exhibit A.

9.      Under the relevant terms of the Catlin Policy, Catlin agreed to pay, under specified circumstances, on behalf of St. Martin Brown, those sums in excess of the deductible that St. Martin Brown is legally obligated to pay as damages and claim expenses because of a professional claim first made and reported during the policy period.

10.     The relevant terms of the Catlin policy include the following:

## I.   INSURING AGREEMENT

The Company will pay on behalf of the **Insured** all sums in excess of the deductible that the **Insured** becomes legally obligated to pay as **damages** and **claims expenses** as a result of a **wrongful act** or **pollution condition** anywhere in the world, provided that:

A.      The **claim** arising out of the **wrongful act** or **pollution condition** must first be made against the **Insured** during the **policy period** or any applicable **optional extension period**.  A **claim** is considered first made when the **Insured** receives notice of the **claim** or when the **Insured** reports a circumstance in accordance with Section VII.B., Reporting A Circumstance;

* * *

D.      No **Named Insured**, or officer, director, principal, partner, or insurance manager of a **Named Insured**, had a basis to believe, as of the inception of the policy, that any **wrongful act** or **pollution condition** asserted in the **claim** might reasonably be expected to be the basis of a **claim.**

One or more **claims** arising out of one or more acts, errors or omissions, or a series thereof, that are logically or causally related will be treated as a single **claim** that was first made on the date the earliest such **claim** was first made. Only one per **claim** deductible and only one per **claim** limit of liability will apply to multiple **claims** treated as a single **claim** under this provision.

## III.   DEFINITIONS

**A.**    **Claim** means a demand for money or services, naming the **Insured**, and alleging a **wrongful act** or **pollution condition**.

**B.**    **Claim expenses** means all reasonable and necessary fees, costs, and expenses incurred in the investigation, adjustment, defense and appeal of a **claim**, if incurred by the Company, by an attorney designated by the Company, or by the **Insured** with the Company's written consent. Such amounts may include premiums on appeal bonds, attachment bonds or any similar bonds; however, the Company is not obligated to apply for, secure or furnish any such bond.

**Claim expenses** do not include the salaries of Company or **Insured** management or personnel, or the fees of independent adjusters. Amounts incurred for settlement or resolution of a **claim** are not **claim expenses.**

\* \* \*

**D.**    **Damages** means any compensatory sum the **Insured** is legally obligated to pay as a result of a **wrongful act** or **pollution condition**. **Damages** includes **cleanup costs**. Where permitted by law, **damages** includes punitive or exemplary damages and the multiple portion of any multiplied award. **Damages** also includes liquidated damages, but only to the extent of liability the **Insured** would have had in the absence of the agreement for liquidated damages.

**Damages** does not include: fines, taxes or penalties imposed on the **Insured**; any return, withdrawal or reduction in professional fees; any equitable obligation, including restitution, disgorgement, or the costs of complying with injunctive relief; or the time and expense incurred by the **Insured** in addressing or resolving a **claim** or circumstance.

\* \* \*

**K.**    **Professional services** means those services that the Insured is legally qualified to perform for others in the **Insured's** capacity as an architect, engineer, land surveyor, landscape architect, construction manager, planner, interior designer, scientist, technical consultant, expert witness, or as defined by endorsement to the policy.

\* \* \*

4

    **L.**    **Wrongful act**    means an alleged or actual act, error, or omission in the performance of **professional services** for others by the **Insured** or by any entity or person for whom the **Insured** is legally liable.

* * *

**V.**    **LIMITS OF LIABILITY AND DEDUCTIBLES**

* * *

    **B.**    **Deductibles**

    1.    Subject to paragraph 2. below, the **Named Insured** must pay the per **claim** deductible shown under Item 4.A. in the Declarations for the sum of **damages** and **claim expenses** covered under the policy for each single **claim** first made during the **policy period** before the Company has any obligation to pay **damages** or **claims expenses** for that **claim.** If the **Named Insured** does not pay the deductible, any other **Insured** may pay the deductible to satisfy this obligation.

    2.    The aggregate deductible shown under Item 4.B. in the Declarations, if any, is the maximum amount of total deductibles the **Named Insured** is obligated to pay for all **claims** first made during the **policy period.**

    3.    **Mediation and Risk Management Credit**: The deductible obligation of the **Named Insured** for a **claim** may be reduced in one of the following two ways:

        a.    If the Company and the **Insured** had agreed beforehand to attempt to resolve the **claim** at **mediation** and if the Company and the **Insured** resolve the **claim** by such **mediation,** the **Named Insured's** deductible obligation for such **claim** will be reduced by 50% subject to a maximum reduction of $25,000; or

        b.    If the **Named Insured** provides the Company a written agreement for the **professional services** at issue with respect to the **claim** that was fully

5

executed prior to performance of such services and the **Insured** can demonstrate to the Company's reasonable satisfaction the existence of both of the following conditions, the **Named Insured's** deductible obligation for such **claim** will be reduced by 50% subject to a maximum reduction of $25,000:

(1)     The written agreement contains either (a) a limitation of the **Insured's** liability to no more than the larger of the fee for the **professional services** or $100,000, or (b) a waiver of consequential damages provision in favor of the **Insured**; and

(2)     Where the services of any other design professional, consultant, contractor or construction manager have been engaged by any **Insured** in the course of the **professional services** at issue with respect to the **claim**, prior to the performance of such services, the **Insured** either (a) entered into and preserved fully executed written agreements with each such provider of services; or (b) obtained and preserved certificates of insurance evidencing professional liability and general liability insurance from each such provider of services.

The potential credits provided for in this section are alternative, not cumulative, and only one reduction can apply for any single **claim**.

* * *

6

## VI.   DEFENSE, SETTLEMENT, AND COOPERATION

* * *

### C.   Duties of Insured

As a condition precedent to this insurance, in the event of a **claim** or reported circumstance:

1.  The **Insured** shall promptly forward to the Company all documents that the **Insured** receives in connection with the **claim** or circumstance, and will direct all inquiries regarding the **claim** or circumstance to the Company or the attorney designated by the Company.

2.  The **Insured** shall cooperate fully with the Company and its designees in the investigation, defense and settlement of any **claim** or circumstance, the conduct of suit or any other proceeding, and in securing and enforcing any right of contribution, indemnity, or other recovery that the **Insured** may have; such cooperation includes but is not limited to, when requested, attending any proceedings, assisting in securing evidence and obtaining the attendance and testimony of witnesses, whether in a legal proceeding or in an examination by the Company; and such cooperation will be without charge to the Company, except as provided otherwise in Section II.A., Named Insured's Reimbursement.

3.  The **Insured** shall not voluntarily make any payment, assume or admit any liability, settle, or incur any expense, without prior written consent of the Company.

4.  The **Insured** shall obtain the Company's written consent before exercising any right, assuming any obligation, or making any agreement, with respect to any dispute resolution mechanism or process, including but not limited to rejecting or demanding arbitration.

* * *

## VIII.  CONDITIONS

* * *

### F.      Bankruptcy Or Insolvency

The bankruptcy or insolvency of the **Insured** or the **Insured's** estate will not relieve the Company of any of its obligations under the policy.

**FCOH's Claim**

11.      FCOH is pursuing contractually required pre-litigation alternative dispute resolution against St. Martin Brown.  The August 9, 2013 letter from FCOH's counsel seeking mediation is attached as Exhibit B.

12.      The Family Center of Hope previously had pending a Petition for Damages against Catlin Insurance Company, St. Martin Brown and Mr. St. Martin on November 2, 2012 in Civil District Court for the Parish of Orleans, Case No. 2012-10343.  The Petition for damaged is s attached as Exhibit C.  This action was dismissed by the Court following initial motion practice by St. Martin Brown and Catlin, which judgment is attached as Exhibit D.

13.      In that Petition, FCOH alleged that, on or about September 24, 2007, "Joseph St. Martin, on behalf of [St. Martin Brown] entered into a contract with plaintiff, The Family Center of Hope, whereby Joseph St. Martin would provide the design drawings of its mechanical/electrical/plumbing engineer as part of the bid package for the [sic] for The Family Center of Hope."  (Exh. C at ¶ 4.) (Capitalization and emphasis omitted.)

14.      It is alleged that "defendant failed to include necessary portions in the original design plans which caused major errors, omissions, and delays in the construction of The Center, and further damage to the structure of the facility." (Exh. C at ¶ 6.)

15.    It is further alleged that "[t]hroughout this process defendant has acknowledged the errors in his plans that have caused errors, omissions, and delays in construction of the facility.  To date, The Center has incurred damages in the amount of $567,796.14."  (Exh. C at ¶ 7.)  And, it is further asserted that the alleged failures have resulted in the City of New Orleans and the State Capital Outlay withholding $256,286.65 in approved funds until the claim is resolved. (Exh. C at ¶ 8.)

16.    FCOH also asserted that "due to the failure to provide complete construction documents, the delay in work has caused further damage to the building, which will require $200,000.00 in roof, mildew, sheet rock and termite damage repair."  (Exh. C at ¶ 9.)

17.    FCOH contends that St. Martin Brown breached its contract with plaintiff "in failing to provide correct and proper design drawings of its mechanical/electrical/plumbing engineer [sic] as part of the bid package to renovate the Center, which prevented the advanced quality of construction promised to plaintiff."  It is further contended that "this listed negligence, and/or errors and omissions has caused monetary damages for repairs, extra expenses (such as but not limited to roof, mildew, sheet rock, and termite damage repair), loss of rental income, a loss of multiple business and social service opportunities over the past two years, and other damages that will be revealed through discovery in this matter."  (Exh. C at ¶ 11.)

18.    In the Prayer for damages, the damages claimed include: "loss of, repair, or remediation expenses of the property; loss of rents and extra expenses caused by the delays; loss of value and opportunities due to the substandard construction and delays; inconvenience; loss of financial assets and profits; emotional distress and mental anguish; attorney's fees; costs of this litigation; and

all damages allowed under Louisiana law which may be proven at the trial of this matter." (Exh. C at ¶ 12.)

### St. Martin Brown Voluntarily Admitted Liability/Assumed Liability Without Catlin's Written Consent

19.   St. Martin Brown was aware during the Project that there were omissions within the MEP engineer's drawings.   The specific electrical and plumbing omissions were identified in Change Order No. 007, dated April 7, 2011. The total amount indicated as necessary to fund the change order was $283,043.45. On May 13, 2011, the FCOH wrote to St. Martin Brown stating:

> The Family Center of Hope is requesting that St. Martin Brown & Associates, LLC pay the amount of $283,043.45 via its errors and omissions professional liability insurance carrier.   Both parties has agreed as per change order #007 dated 4/7/2011….

20.   In support of its tender, St. Martin Brown provided Catlin a copy of Change Order No. 007.   The change order relates to the four following items at the Project: (1) GC demobilization and remobilization relative to notice to stop work, as described in PCO 4R dated 3/11/10 - $50,300; (2) Changes to the electrical subcontractors bid due to changes from the original bid set to the revised plans and fire marshal plans, as described in PCO 13R2 dated 10/27/10 - $53,857.55; (3) Plumbing changes from the plumbing subcontractor due to changes from the bid set to the revised plans and fire marshal plans, as described in PCO 15R4 dated 2/10/11 - $129,273.86; and (4) Cost to install fire sprinkler tap and riser, as described in PCO 45 dated 4/7/11 - $49,612.04.

21.   This version of Change Order No. 007 is signed by Mr. St. Martin, FCOH, and the general contractor, M. Slayton Construction, Inc. ("M. Slayton"). The signature date is April 6, 2011.   Handwritten next to the price for the change order is an asterisk and the words, "see attached."   The attached document incorporated into the Change Order states:

All parties have agreed: all line items included in CO 007 to the amount of $283,043.45 are completely funded by St. Martin & Associates, LLP's errors and omissions professional liability insurance carrier. At the conclusion of the claims process the funds will be forwarded to Family Center of Hope. Subsequently, Family Center of Hope will compensate the contractor for work completed as per the construction documents.

22.     This version of Change Order No. 007 is referred to herein as "CO7 Version 1."

23.     Approximately seven weeks later, on May 25, 2011, St. Martin Brown's agent forwarded the FCOH's letter to Catlin seeking coverage for the $283,043.45 under the Catlin Policy.

24.     After St. Martin Brown provided notice to Catlin of this matter, Catlin's Wayne Marshall spoke with Joseph St. Martin on May 31, 2011. Mr. St. Martin confirmed that St. Martin Brown had conceded liability for the cost of Change Order No. 007 and agreed in writing that St. Martin Brown's professional liability carrier would fund the entire amount of the change order. Mr. Marshall advised Mr. St. Martin that there was no coverage as per the duties of the insured section of the Catlin Policy. Mr. St. Martin confirmed that he understood.

25.     Consistent with the information received and considered, Catlin issued a denial letter on June 9, 2011 based on St. Martin Brown's voluntary assumption of liability for Change Order No. 007.

26.     St. Martin Brown did not provide any additional documents or information to Catlin until December 14, 2011. On that date, St. Martin Brown sent a letter to Catlin that claimed St. Martin Brown was unaware of the added handwritten note and agreement language in CO7 Version 1 until Catlin issued its denial letter. Mr. St. Martin advised that the usual procedure for execution of change orders was that St. Martin Brown would sign, then send to the contractor, who would then sign and send to FCOH for its signature. In support of this contention, St. Martin Brown sent an unexecuted version of what it purported to be

Change Order No. 007.  The change order sent, however, was not Change Order No. 007 and related to none of the four items detailed above with respect to CO7 Version 1.

27.    Mr. St. Martin also advised in this same letter that "the issue first came to light that this would be submitted as a claim on April 8, 2011." He stated that the City of New Orleans, which is a partial funding source for the Project, indicated they wanted a summary of all change orders to date on the Project, and if there were any unforeseen conditions related to design issues, the City advised it would not pay for such change orders. Mr. St. Martin stated that, at that time, the FCOH indicated they were going to pursue getting Change Order No. 007 reimbursed by submitting an errors and omissions claim.

28.    On December 14, 2011, St. Martin Brown also sent Catlin a copy of the signature page of Change Order No. 007 with only St. Martin's signature. This version of Change Order No. 007 did not include the handwritten asterisk or "see attached" language. However, when one compares Mr. St. Martin's signature on this version of Change Order No. 007 to the signature on CO7 Version 1, it is clear that they are two different signatures and thus two different versions of the document.

29.    St. Martin Brown provided additional documents to Catlin on January 30, 2012. One document was a Construction Change Directive executed by St. Martin Brown, FCOH, and M. Slayton on January 27, 2011. This document directed M. Slayton to execute proposed change orders (dated March – December 2010) concerning installation of electrical and plumbing components. St. Martin Brown also provided a new version of a fully executed Change Order No. 007. The signature date on this version is April 7, 2011 (as opposed to April 6, 2011 for CO7 Version 1) and does not include the handwritten asterisk or "see attached" language.

30.     St. Martin Brown also provided approximately twenty emails concerning Change Order No. 007.  These emails indicate that the City first advised St. Martin Brown that it would not pay for any change orders that are due to the revision of plans no later than in a January 4, 2011 email.  The emails also reveal that St. Martin Brown was contemplating submitting a claim for coverage as early as January 30, 2011.  Specifically, in an email to M. Slayton, St. Martin Brown stated that until M. Slayton provided a "complete PCO showing the corrections and new cost associated with the work, review by SBA's insurance carrier cannot be completed."

31.     Then, on February 8, 2012, St. Martin Brown provided Catlin with a list of all change orders on the project.  According to the chart, St. Martin Brown is seeking coverage for the costs associated with Change Order No. 007 and Change Order No. 15.  The note next to Change Order No. 15 stated, "The cost for additional time have been addressed in the previous change orders and the cost presented would be considered duplicate charges."  The chart also indicates that this change order was "Submitted to SMB+A insurance carrier for consideration." The date St. Martin Brown received this change order was January 11, 2012, and the total amount is $18,224.98.

32.     Catlin agreed to defend St. Martin Brown subject to a written reservation of rights.  Catlin continues to defend St. Martin Brown, subject to a reservation of rights, with respect to defense and indemnity, as set forth in correspondence to St. Martin Brown.  A copy of Catlin's reservations of right letter is attached hereto as Exhibit D.

33.     St. Martin Brown now claims to be unable to satisfy its deductible obligations, and it has failed to do so, refusing to pay for reasonable defense fees and expenses necessary to defend against FCOH's claim.

## FIRST CLAIM FOR RELIEF

### (Declaratory Relief – No Indemnity Obligation, As a Matter of Law)

34.    Catlin refers to and incorporates herein by reference paragraphs 1 through 33, inclusive, as though set forth in full herein.

35.    Catlin contends that it is not obligated to indemnify St. Martin Brown for FCOH's claim, because St. Martin Brown breached a condition precedent to coverage under the policy in voluntarily admitting liability and/or assuming liability for its alleged acts, errors or omissions on the Project that have given rise to FCOH's claim against St. Martin Brown, without first receiving Catlin's written consent.  St. Martin Brown and FCOH dispute Catlin's coverage position.

36.    An actual controversy exists between Catlin, on the one hand, and St. Martin Brown and FCOH, on the other hand, that involves the rights and obligations of Catlin under the Policy with respect to indemnity coverage for liability asserted by FCOH against St. Martin Brown.  This controversy is within the jurisdiction of this Court and can be resolved by a declaratory judgment of this Court and without the involvement of other suits.

37.    The issues as to any indemnity obligation to be determined include (but are not limited to) that Catlin contends that there is no indemnity obligation as matter of law because the policy provides the policy does not respond to when an insured, without Catlin's written consent, voluntarily admitted liability and/or assumed liability.  St. Martin Brown breached a condition precedent to coverage under the policy by voluntarily admitting liability and/or assuming liability for its alleged acts, errors or omissions on the Project that have given rise to FCOH's claim against St. Martin Brown, without first receiving Catlin's written consent. St. Martin Brown also has failed to satisfy its deductible obligations, and Catlin has no obligation to pay until that is satisfied.

38.     Catlin desires a judicial determination of the rights and duties of the parties with respect to Catlin's obligation, if any, to indemnify St. Martin Brown with respect to FCOH's claim regarding the Project.  Specifically, Catlin desires a general declaration that it is not obligated to indemnify St. Martin Brown under the Policy.

## SECOND CLAIM FOR RELIEF

### (Declaratory Relief – No Duty To Defend, As a Matter of Law)

39.     Catlin refers to and incorporates herein by reference paragraphs 1 through 38, inclusive, as though set forth in full herein.

40.     Catlin contends that it has no duty to defend St. Martin Brown for FCOH's claim, because St. Martin Brown breached a condition precedent to coverage under the policy in voluntarily admitting liability and/or assuming liability for its alleged acts, errors or omissions on the Project that have given rise to FCOH's claim against St. Martin Brown, without first receiving Catlin's written consent.  St. Martin Brown and FCOH dispute Catlin's coverage position.

41.     An actual controversy exists between Catlin, on the one hand, and St. Martin Brown and FCOH, on the other hand, that involves the rights and obligations of Catlin under the Policy with respect to the duty to defend St. Martin Brown against the claims asserted by FCOH against St. Martin Brown.  This controversy is within the jurisdiction of this Court and can be resolved by a declaratory judgment of this Court and without the involvement of other suits.

42.     The issues as to the duty to defend to be determined include (but are not limited to) that Catlin contends that it has no duty to defend St. Martin Brown as matter of law because the policy provides the policy does not respond to when an insured, without Catlin's written consent, voluntarily admitted liability and/or assumed liability.  St. Martin Brown breached a condition precedent to coverage under the policy by voluntarily admitting liability and/or assuming liability for its

alleged acts, errors or omissions on the Project that have given rise to FCOH's claim against St. Martin Brown, without first receiving Catlin's written consent. St. Martin Brown also has failed to satisfy its deductible obligations, and Catlin has no obligation to pay until that is satisfied.

43.   Catlin desires a judicial determination of the rights and duties of the parties with respect to Catlin's obligation, if any, to defend St. Martin Brown with respect to FCOH's claim regarding the Project.   Specifically, Catlin desires a general declaration that it is not obligated to defend St. Martin Brown under the Policy.

### THIRD CLAIM FOR RELIEF

### (Repayment of Defense Costs Paid)

44.   Catlin refers to and incorporates herein by reference paragraphs 1 through 43, inclusive, as though set forth in full herein.

45.   Catlin has paid defense costs in amounts to be established at trial for the defense of St. Martin Brown against the claims asserted by FCOH.

46.   Catlin properly reserved all of its rights with respect to FCOH's claim, including the right to reimbursement of defense costs advanced.

47.   Catlin has suffered a loss as a result of its payment for the defense fees and costs of St. Martin Brown within its applicable deductible obligations or against the uncovered claims of FCOH, and St. Martin Brown has been unjustly enriched by Catlin's payment of defense fees and costs against claims that are not covered under the Policy.

48.   To the extent St. Martin Brown does not fully satisfy its deductible obligations  or any portion of the claim is not covered, Catlin is entitled to an allocation of defense fees and costs between covered and non-covered claims, and reimbursement from St. Martin Brown of that portion of the defense costs and fees paid with respect to FCOH's claim within its deductible obligations or attributable

to uncovered claims, to compensate Catlin for damages and to avoid unjust enrichment to St. Martin Brown.

## PRAYER FOR RELIEF

WHEREFORE, Catlin prays for judgment as follows:

1.     That this Court determine and adjudicate the rights, duties and obligations of the parties with respect to the policy of insurance described in this Complaint and set out in the attached Exhibits; and

2.     On the First Claim For Relief:

a.     For a judicial declaration that Catlin is not obligated to indemnify St. Martin Brown under the Policy for the FCOH's claim concerning the Project;

b.     For a judicial declaration on each of the coverage issues raised in this action; and

3.     On the Second Claim For Relief:

a.     For a judicial declaration that Catlin is not obligated to defend St. Martin Brown under the Policy for the FCOH's claim concerning the Project;

b.     For a judicial declaration on each of the coverage issues raised in this action; and

4.     On the Third Claim For Relief:

a.     For an allocation of defense fees and costs within St. Martin Brown's deductible obligations and between covered and non-covered and any covered claims;

b.     For the sum of defense fees and costs paid with respect to FCOH's claims attributable to St. Martin Brown's deductible obligations or to uncovered claims, with interest thereon at a legal rate from the date the defense fees and costs were paid; and

5.      On Each Claim For Relief

a.      For attorneys' fees, expenses and costs of suit incurred herein; and

b.      For such other and further relief as the Court deems just and proper under the circumstances.

Plaintiff requests trial by jury.

Respectfully Submitted,


/s/ Charles M. Ponder,  III
CHARLES M. PONDER, III, #2052
PONDER LAW FIRM
1010 Common Street, Suite 1715
New Orleans, Louisiana 70112
Telephone: (504) 528-3066
Facsimile: (504) 528-3077
Email: cmponder@att.net

Attorney for Plaintiff
CATLIN SPECIALTY INSURANCE
COMPANY