# EXHIBIT A

# CATLIN

Policy Number: AED-199467-1211      Previous Policy Number: NEW

# PROFESSIONAL AND POLLUTION LIABILITY POLICY
# FOR DESIGN PROFESSIONALS
# POLICY DECLARATIONS

| INSURER | UNDERWRITING OFFICE | PRODUCER |
|---|---|---|
| Catlin Insurance Company, Inc.<br>1330 Post Oak Boulevard<br>Suite 2325<br>Houston, TX 77056<br>[A Stock Company] | 1990 N. California Blvd., Suite 230<br>Walnut Creek, CA 94596 | RiskPro Insurance Agency LLC<br>901 Waterfall Way<br>Suite 407<br>Richardson, TX 75080 |

**NOTICE: THIS IS A CLAIMS MADE AND REPORTED POLICY. SUBJECT TO ITS PROVISIONS, THIS POLICY APPLIES ONLY TO CLAIMS WHICH ARE BOTH FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND FIRST REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD OR WITHIN 60 DAYS AFTER THE END OF THE POLICY PERIOD SHOWN IN THE DECLARATIONS UNLESS AN OPTIONAL EXTENSION PERIOD APPLIES. CLAIM EXPENSES ARE INCLUDED WITHIN AND REDUCE THE LIMIT OF LIABILITY, AND ARE SUBJECT TO ANY DEDUCTIBLE.**

**PLEASE READ THE ENTIRE POLICY CAREFULLY.**

Terms appearing in **bold** are defined in the Policy.

| | |
|---|---|
| **ITEM ONE** | **Named Insured:** St. Martin Brown & Associates<br><br>Principal Address: 365 Canal St Ste 2610<br>New Orleans, LA 70130 |

| | | |
|---|---|---|
| **ITEM TWO** | **Policy Period:** | |
| | Effective Date: | 12/09/2010    at 12:01 a.m. (local time at the address stated in Item 1) |
| | Expiration Date: | 12/09/2011    at 12:01 a.m. (local time at the address stated in Item 1) |

| | | |
|---|---|---|
| **ITEM THREE** | Limits of Liability: | |
| | A. per **claim** | $1,000,000 |
| | B. in the aggregate | $2,000,000 |

| | | |
|---|---|---|
| **ITEM FOUR** | Deductible Amount: | |
| | A. per **claim** | $20,000 |
| | B. in the aggregate | $ Not Applicable |

| | | |
|---|---|---|
| **ITEM FIVE** | Retroactive Date: | 08/29/2007 |

| ITEM SIX | Premium Development | | |
|---|---|---|---|
| | Premium: | $ | 20,430.00 |
| | Surcharges And Taxes (per attached schedule, if any): | $ | Not Applicable |
| | Total Premium, Surcharges and Taxes: | $ | 20,430.00 |

| ITEM SEVEN | Forms and Endorsements Forming a Part of this Policy as of the Inception Date: |
|---|---|
| | See Schedule of Forms and Endorsements |

**THESE DECLARATIONS, TOGETHER WITH THE COMPLETED AND SIGNED APPLICATION FOR THIS POLICY, ALL MATERIALS SUBMITTED THEREWITH OR MADE A PART THEREOF AND THE POLICY FORM ATTACHED HERETO, CONSTITUTE THE POLICY.**

This Policy shall not be valid unless also signed by another duly authorized representative of the Company.

Countersigned:

12/22/2010
Date

by _Thom M Borgi_
Authorized Representative

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SCHEDULE OF FORMS AND ENDORSEMENTS

| Named Insured | | |
|---|---|---|
| St. Martin Brown & Associates | | |
| **Policy Number** | **Policy Period** | |
| AED-199467-1211 | From    12/09/2010 | To    12/09/2011 |

| Forms and Endorsements |
|---|
| DPAE002 0908    Design Professionals Policy Declarations |
| DPAE050 0908    Professional And Pollution Liability Policy For Design Professionals |
| DPAE428 0908    Reliance On Another Insurance Company's Application |
| DPAE119 1108    Louisiana Changes |
| ABAP400 0507    In Witness Endorsement |

ABAP 302 1007                                                              Page 1 of 1

**PROFESSIONAL AND POLLUTION LIABILITY
POLICY FOR DESIGN PROFESSIONALS**



NOTICE: THIS IS A CLAIMS MADE AND REPORTED POLICY. SUBJECT TO ITS PROVISIONS, THIS POLICY APPLIES ONLY TO CLAIMS WHICH ARE BOTH FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND FIRST REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD OR WITHIN 60 DAYS AFTER THE END OF THE POLICY PERIOD SHOWN IN THE DECLARATIONS UNLESS AN OPTIONAL EXTENSION PERIOD APPLIES. CLAIM EXPENSES ARE INCLUDED WITHIN AND REDUCE THE LIMIT OF LIABILITY, AND ARE SUBJECT TO ANY DEDUCTIBLE.

PLEASE READ THE ENTIRE POLICY CAREFULLY.

Words and phrases that appear in bold print have special meanings that are defined in Section III., DEFINITIONS.

In consideration of the payment of the premium, and in reliance upon the statements made in the application, which is incorporated into this policy and forms a part hereof, the Insuring Company identified in the Declarations, herein called the "Company," agrees with the **Named Insured** as follows:

I.  **INSURING AGREEMENT**

The Company will pay on behalf of the **Insured** all sums in excess of the deductible that the **Insured** becomes legally obligated to pay as **damages** and **claims expenses** as a result of a **wrongful act** or **pollution condition** anywhere in the world, provided that:

A.  The **claim** arising out of the **wrongful act** or **pollution condition** must first be made against the **Insured** during the **policy period** or any applicable **optional extension period**. A **claim** is considered first made when the **Insured** receives notice of the **claim** or when the **Insured** reports a circumstance in accordance with Section VII.B., Reporting A Circumstance;

B.  The **claim** must be first reported in writing to the Company in accordance with Section VII., Reporting, during the **policy period** or within 60 days after either the end of the **policy period** or the end of the **optional extension period**, if one applies;

C.  The **wrongful act** or **pollution condition** occurred on or after the Retroactive Date in Item 5. in the Declarations; and

D.  No Named **Insured**, or officer, director, principal, partner, or insurance manager of a Named **Insured**, had a basis to believe, as of the inception of the policy, that any **wrongful act** or **pollution condition** asserted in the **claim** might reasonably be expected to be the basis of a **claim**.

One or more **claims** arising out of one or more acts, errors or omissions, or a series thereof, that are logically or causally related will be treated as a single **claim** that was first made on the date the earliest such **claim** was first made. Only one per **claim** deductible and only one per **claim** limit of liability will apply to multiple **claims** treated as a single **claim** under this provision.

II.  **SUPPLEMENTAL COVERAGES**

All payments provided for in this section shall not be subject to any deductible and are in addition to the limits of liability.

A.   **Named Insured's Reimbursement**

Upon written request by the **Named Insured**, the Company will reimburse the Named Insured up to $400 a day, subject to a maximum of $10,000 per **claim**, for the Named **Insured's** actual loss of earnings for attendance, at the Company's written request, of any **Insured** at a trial, hearing, or deposition involving a **claim** against any **Insured**.

B.   **Free Claim Prevention Services**

At its sole discretion and expense, the Company will pay for all costs and expenses the Company incurs in investigating a circumstance reported by the **Insured** in accordance with Section VII.B., Reporting A Circumstance, until the date a **claim** arising out of that circumstance is made.

C.   **Licensing or Regulatory Board Proceedings Reimbursement.**

Upon written request made by the **Insured** during the **policy period**, the Company will reimburse the **Insured** up to a maximum of $25,000 per **policy period** for reasonable and necessary fees and expenses subsequently incurred by counsel in responding to an investigation, disciplinary hearing or administrative action brought directly against the **Insured** by or before a state licensing or regulatory board, provided that the proceeding is first commenced against the **Insured** during the **policy period** and concerns the performance of the **Insured's professional services**.

D.   **ADA, FHA and OSHA Proceedings Reimbursement.**

Upon written request made by the **Insured** during the **policy period**, the Company will reimburse the **Insured** up to a maximum of $25,000 per **policy period** for reasonable and necessary fees and expenses subsequently incurred by counsel in responding to a regulatory or administrative action brought directly against the **Insured** by a government agency under the Americans With Disabilities Act, the Fair Housing Act or the Occupational Safety and Health Act, provided that the action is first commenced against the **Insured** during the **policy period** and concerns the **Insured's professional services**.

E.   **Peer Review Reimbursement**

Upon written request made by the **Named Insured** during the **policy period**, the Company will reimburse the **Named Insured** for half the cost of a peer review program, subject to a maximum of $2,500 per **policy period** for all such programs, conducted by a qualified national professional society such as the American Institute of Architects or the American Council of Engineering Companies.

III.   **DEFINITIONS**

A.   **Claim** means a demand for money or services, naming the **Insured**, and alleging a **wrongful act or pollution condition**.

B.   **Claim expenses** means all reasonable and necessary fees, costs, and expenses incurred in the investigation, adjustment, defense and appeal of a **claim**, if incurred by the Company, by an attorney designated by the Company, or by the **Insured** with the Company's written consent. Such amounts may include premiums on appeal bonds, attachment bonds or any similar bonds; however, the Company is not obligated to apply for, secure or furnish any such bond.

**Claim expenses** do not include the salaries of Company or **Insured** management or personnel, or the fees of independent adjusters. Amounts incurred for settlement or resolution of a claim are not **claim expenses.**

C.   **Clean up costs** means expenses incurred in the removal or remediation of soil, surface water, groundwater, or other contamination, resulting from a **pollution condition.**

D.   **Damages** means any compensatory sum the **Insured** is legally obligated to pay as a result of a **wrongful act** or **pollution condition.** **Damages** includes **clean up costs.** Where permitted by law, **damages** includes punitive or exemplary damages and the multiple portion of any multiplied award. **Damages** also includes liquidated damages, but only to the extent of liability the **Insured** would have had in the absence of the agreement for liquidated damages.

**Damages** does not include: fines, taxes or penalties imposed on the **Insured**; any return, withdrawal or reduction in professional fees; any equitable obligation, including restitution, disgorgement, or the costs of complying with injunctive relief; or the time and expense incurred by the **Insured** in addressing or resolving a **claim** or circumstance.

E.   **Insured** means the **Named Insured** and:

1.   Any past or present partner, principal, officer, director, stockholder, regular or temporary employee, or member of the **Named Insured**, while acting within the scope of their duties as such, including any leased personnel under the **Named Insured's** direct supervision;

2.   A retired partner, principal, officer, director, stockholder, employee or member of the **Named Insured**, while acting within the scope of their duties as a consultant for the **Named Insured**;

3.   The estate, heirs, executors, administrators, assigns and legal representatives of any **Named Insured** or other **Insured** under paragraph 1. above, in the event of death, incapacity or bankruptcy, or the spouse or legal domestic partner of any **Named Insured** or **Insured** under paragraph 1. above, but only to the extent the liability of such **Named Insured** or **Insured** is covered under this policy;

4.   Any entity newly formed or acquired by the **Named Insured** during the **policy period** in which the **Named Insured** has more than 50% legal or beneficial interest. However:

   a.   The Company will only provide coverage for **claims** arising out **professional services** performed on or after the date of formation or acquisition;

   b.   This coverage will expire within 90 days of such formation or acquisition or the end of the **policy period**, whichever is earlier, unless the **Named Insured** provides the Company written details of such newly formed or acquired entity to the Insurer and pays the additional premium requested by the Company, if any.

5.   Any **Named Insured** with regard to its participation in a legal entity, including a joint venture, but solely for the **Named Insured's** legal liability for the performance of **professional services** by the respective legal entity or joint venture. **Insured** does not include the legal entity itself, the joint venture itself or any other entity that is part of either the legal entity or joint venture.

F.  **Mediation** means the non-binding facilitation by a neutral third party of **claim** resolution.

G.  **Named Insured** means the persons or entities specified in Item 1. in the Declarations.

H.  **Optional extension period** means the period of time after the end of the **policy period** in which a **claim**, resulting from a **wrongful act** or **pollution condition** that occurred prior to the end of the **policy period**, may be reported to the Company.

I.  **Policy period** means the period of time from the Effective Date shown in Item 2. in the Declarations to the earliest of the termination, expiration or cancellation of the policy.

J.  **Pollution condition** means an alleged or actual discharge, dispersal, release, seepage, migration or escape of smoke, soot, fumes, acids, alkalis, toxic chemicals, asbestos, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water, resulting from the performance of **professional services** for others by the **Insured** or by any entity or person for whom the **Insured** is legally liable. Waste includes materials to be recycled, reconditioned or reclaimed.

K.  **Professional services** means those services that the **Insured** is legally qualified to perform for others in the **Insured's** capacity as an architect, engineer, land surveyor, landscape architect, construction manager, planner, interior designer, scientist, technical consultant, expert witness or as defined by endorsement to the policy.

   **Professional services** includes ordinary technology services provided for others in the course of **professional services** described above. Such technology services include the design, development, programming, analysis, training, use, hosting, management, support and maintenance of any software, database, internet service, or website; such technology services do not include the supplying of software or other technology or electronic products (other than software sold or supplied to by the **Insured** to its client in connection with the **Insured's** provision of other **professional services** for that client), or any services with respect to computer or telecommunications hardware.

   **Professional services** also includes services rendered pro bono for others or in the course of professional peer review for others.

L.  **Wrongful act** means an alleged or actual act, error, or omission in the performance of **professional services** for others by the **Insured** or by any entity or person for whom the **Insured** is legally liable.

IV.  **EXCLUSIONS**

This insurance shall not apply to and the Company will not defend or pay under this policy for **damages** or **claim expenses** arising out of:

A.  Any dishonest, fraudulent, intentionally wrongful, criminal or malicious act, error or omission committed by or at the direction of any **Insured**. However, this exclusion shall not apply to the Company's obligation to defend or pay **claim expenses**, or to any **Insured** who did not commit, participate in or have knowledge of any conduct described in this exclusion.

B.  Any **Insured's** alleged liability under any contract, agreement or express warranty or guarantee, except where such liability would have existed in the absence of such contract or agreement.

---

DPAE 050 0908                                                      Page 4 of 11

C.     The design or manufacture of any goods or products which are sold or supplied by any **Insured** or by others under license from any **Insured**. This exclusion does not apply to software sold or supplied by the **Insured** to its client in connection with the **Insured's** provision of other **professional services** for that client.

D.     Actual construction, including but not limited to performing construction, erection, fabrication, installation, assembly, manufacture, demolition, dismantling, drilling, excavation, dredging, remediation, or supplying of equipment, parts, or materials (other than furnishings in course of interior design services). However, this exclusion will not apply to such actions performed in the course of sampling or testing procedures necessary for other **professional services** otherwise insured by this insurance.

E.     A **claim** made by any person or entity (or any partner, principal, officer, director, stockholder, or employee of such entity):

    1.    That is an **Insured**;

    2.    That any **Insured** operates, manages, or controls;

    3.    That operates, manages, controls, or wholly or partly owns any **Insured**; or

    4.    In which any **Insured** has a legal or beneficial interest in excess of 49%.

F.     Any **Insured's** employment obligations, decisions, practices or policies as an employer, including but not limited to, any **claim** under any worker's compensation, unemployment compensation, employee benefits, or disability benefits law or similar law.

G.     Actual or alleged discrimination, humiliation, harassment or misconduct, including but not limited to that which is based on an individual's race, religion, color, gender, sexual preference or orientation, national origin, age, disability, or marital status. This exclusion does not apply to an otherwise covered **claim** brought under the Americans with Disabilities Act or the Fair Housing Act, or any similar state or local law or ordinance.

H.     Any risk that would be in violation of the laws of the United States including, but not limited to, U.S. economic or trade sanction laws or export control laws administered by the U.S. Treasury, State, and Commerce Departments (e.g., the economic and trade sanctions administered by the U.S. Treasury Office of Foreign Assets Control).

V.     **LIMITS OF LIABILITY AND DEDUCTIBLES**

    A.    **Limits of Liability**

        1.    Subject to paragraph 2. below, the per **claim** limit of liability shown under Item 3.A. in the Declarations is the maximum amount the Company will pay for the sum of **damages** and **claim expenses** for each single **claim** first made during the **policy period**.

        2.    The aggregate limit of liability shown under Item 3.B. in the Declarations is the maximum amount the Company will pay for the sum of **damages** and **claim expenses** for all **claims** first made during the **policy period**.

    B.    **Deductibles**

        1.    Subject to paragraph 2. below, the **Named Insured** must pay the per **claim** deductible shown under Item 4.A. in the Declarations for the sum of **damages**

and **claim expenses** covered under the policy for each single **claim** first made during the **policy period** before the Company has any obligation to pay **damages** or **claims expenses** for that **claim**. If the **Named Insured** does not pay the deductible, any other **Insured** may pay the deductible to satisfy this obligation.

2.   The aggregate deductible shown under Item 4.B. in the Declarations, if any, is the maximum amount of total deductibles the **Named Insured** is obligated to pay for all **claims** first made during the **policy period**.

3.   <u>Mediation and Risk Management Credit</u>:   The deductible obligation of the **Named Insured** for a **claim** may be reduced in one of the following two ways:

   a.   If the Company and the **Insured** had agreed beforehand to attempt to resolve the **claim** at **mediation** and if the Company and the **Insured** resolve the **claim** by such **mediation**, the **Named Insured's** deductible obligation for such **claim** will be reduced by 50% subject to a maximum reduction of $25,000; or

   b.   If the **Named Insured** provides the Company a written agreement for the **professional services** at issue with respect to the **claim** that was fully executed prior to performance of such services and the **Insured** can demonstrate to the Company's reasonable satisfaction the existence of both of the following conditions, the **Named Insured's** deductible obligation for such **claim** will be reduced by 50% subject to a maximum reduction of $25,000:

      (1)   The written agreement contains either (a) a limitation of the **Insured's** liability to no more than the larger of the fee for the **professional services** or $100,000, or (b) a waiver of consequential damages provision in favor of the **Insured**; and

      (2)   Where the services of any other design professional, consultant, contractor or construction manager have been engaged by any **Insured** in the course of the **professional services** at issue with respect to the **claim**, prior to the performance of such services, the **Insured** either (a) entered into and preserved fully executed written agreements with each such provider of services; or (b) obtained and preserved certificates of insurance evidencing professional liability and general liability insurance from each such provider of services.

   The potential credits provided for in this section are alternative, not cumulative, and only one reduction can apply for any single **claim**.

**C.   Number of Insureds, Claimants, or Claims**

The fact that a claim is made against more than one **Insured** or is made by more than one claimant will not increase the applicable limit of liability or number of deductibles. The treatment of certain **claims** as a single **claim** under Section I., Insuring Agreement, governs what **claims** constitute a single **claim** under this policy, and is not affected by the number of **Insureds** or claimants involved in the **claim**.

**VI.**   **DEFENSE, SETTLEMENT, AND COOPERATION**

**A.**   **Defense of the Claim**

1.   The Company has the right and duty to defend any **claim** against the **Insured** to which this insurance applies even if any of the allegations are groundless, false, or fraudulent. Defense counsel may be designated by the Company, or at the Company's option, by the **Insured** with the Company's written consent and subject to the Company's guidelines. The payment of **claim expenses** reduces the applicable limit of liability. The Company is not obligated to defend, or to continue to defend, any **claim** or to pay any **damages** or **claim expenses**, or any combination thereof, after any applicable limit of liability has been exhausted by payments.

2.   In the event the **Insured** is entitled by law to retain independent counsel of its choosing to defend the **Insured** at the Company's expense and chooses to do so, the attorney fee component of **claims expenses** shall be limited to the average rate the Company actually pays to counsel it retains in the ordinary course of business in the defense of similar **claims** in the community where the **claim** is being defended. In addition, the Company may require that the independent counsel possess certain minimum qualifications, which may include that the selected counsel have (1) at least five years of civil litigation experience, including substantial experience defending the subject at issue in the **claim**, and (2) errors and omissions coverage. The **Insured** further agrees to require its independent counsel to provide the Company with information concerning the **claim** in a timely manner and to respond to the Company's requests for information concerning the **claim**. The **Insured** may, at any time, freely and fully waive any right to select independent counsel by a signed consent.

**B.**   **Consent to Settlement**

The Company will not settle any **claim** without the **Named Insured's** written consent. If however, the **Named Insured** withholds consent to a settlement recommended by the Company, then:

1.   The Company's liability for **damages** shall not exceed the amount for which the **claim** could have been so settled; and

2.   The Company shall only be liable for 50% of **claim expenses** in excess of the deductible incurred after the date the requested consent was withheld, and the **Named Insured** shall be liable for the remaining 50% of **claim expenses** in excess of the deductible incurred after such date.

**C.**   **Duties of Insured**

As a condition precedent to this insurance, in the event of a **claim** or reported circumstance:

1.   The **Insured** shall promptly forward to the Company all documents that the **Insured** receives in connection with the **claim** or circumstance, and will direct all inquiries regarding the **claim** or circumstance to the Company or the attorney designated by the Company.

2.   The **Insured** shall cooperate fully with the Company and its designees in the investigation, defense and settlement of any **claim** or circumstance, the conduct

of suit or any other proceeding, and in securing and enforcing any right of contribution, indemnity, or other recovery that the **Insured** may have; such cooperation includes but is not limited to, when requested, attending any proceedings, assisting in securing evidence and obtaining the attendance and testimony of witnesses, whether in a legal proceeding or in an examination by the Company; and such cooperation will be without charge to the Company, except as provided otherwise in Section II.A., Named Insured's Reimbursement.

3.    The **Insured** shall not voluntarily make any payment, assume or admit any liability, settle, or incur any expense, without the prior written consent of the Company.

4.    The **Insured** shall obtain the Company's written consent before exercising any right, assuming any obligation, or making any agreement, with respect to any dispute resolution mechanism or process, including but not limited to rejecting or demanding arbitration.

**D.**    **Fraud in Claim**

If the **Insured** shall commit fraud in submitting of a **claim** or information with respect to a **claim**, as regards amount or otherwise, this insurance shall become void with respect to that **Insured** for such **claim** and for other **claims** from the date of the first fraudulent submission.

**VII.**    **REPORTING**

**A.**    **Reporting a Claim**

As a condition precedent to coverage under this insurance, in the event of a **claim**, the **Insured** must do the following:

1.    Report the **claim** to the Company in writing as soon as reasonably possible during the **policy period**, or any applicable **optional extension period**, or within 60 days after the end of the **policy period**. Reporting should be sent to the Company at the address stated on the Declarations; and

2.    Provide a copy of the **claim**, if in writing, and specify in the report the names and addresses of the **Insured** reporting the **claim** and the persons making a **claim** against the **Insured**, when the **claim** was made, and the **wrongful act** or **pollution condition** that is the subject of the **claim**, as well as any other relevant facts or allegations known to the **Insured**;

**B.**    **Reporting a Circumstance**

If, during the **policy period**, the **Insured** becomes aware of a circumstance that may reasonably be expected to be the basis of a **claim** and if the **Insured**, during the **policy period**, provides the Company with a written report of the circumstance, to the address stated on the Declarations, containing:

1.    When and how the **Insured** first became aware of such circumstance;

2.    Any **wrongful act** or **pollution condition** asserted or believed to be at issue, and the **professional services** involved in the circumstance;

3.    What happened and the dates and entities involved; and

4.   The nature of any alleged or potential injury or **damages**;

then any **claim** that is subsequently made against the **Insured** arising out of such circumstance will be deemed to have been made on the date the Company received the written report of the circumstance.

## VIII.   CONDITIONS

### A.   First Named Insured As Sole Agent

The first **Named Insured** in Item 1. in the Declarations will be the sole agent and will act on behalf of all of the **Insureds** for the purpose of giving any notices, any amendments to or cancellation of the policy, for the completing of any applications and the making of any statements and representations, for the payment of premium and the receipt of any return premium that may become due under this policy, for the payment of the deductible and the exercising or declining to exercise any right under this policy, including the purchase of any **optional extension period**.

### B.   Subrogation

In the event of any payment of any **claim** under this policy, the Company will be subrogated in the amount of such payment to all of the **Insured's** rights of recovery against any person or organization.   The **Insured** must do everything reasonably necessary to secure these rights and must do nothing after a **claim** is made to jeopardize them.  The Company hereby waives such subrogation rights against any **Insured** under this policy, and also against the **Insured's** client to the extent that the **Insured** had, prior to the **claim** or circumstance, a written agreement to waive such rights.

### C.   Premium

All premium charges under this policy will be computed according to the rules, rates, and rating plans which apply at the Effective Date of the **policy period** stated in Item 2. in the Declarations.

### D.   Examination And Audit

If the Company requests, the **Insured** agrees to allow the Company to examine and audit the **Insured's** financial books and records.  The Company may do this at any time during the **policy period** or up to three years after the end of the **policy period**.

### E.   Action Against The Company

No action may be brought against the Company concerning this policy unless, as a condition precedent to such action, the **Insured** has fully complied with all the terms of this policy, and the amount of the **Insured's** obligation to pay has been decided either by final judgment against the **Insured** after actual contested trial, or by written agreement among the **Insured**, the Company, and the claimant.  No person or entity has any right under this policy to include the Company in any action against the **Insured** to determine the **Insured's** liability, nor will the Company be brought into such action by any **Insured** or any **Insured's** representative.

### F.   Bankruptcy Or Insolvency

The bankruptcy or insolvency of the **Insured** or the **Insured's** estate will not relieve the Company of any of its obligations under this policy.

G.    **Changes**

None of the provisions of this policy will be waived, changed, or modified except by written endorsement issued by the Company to form a part of this policy. Notice to any agent of the Company or knowledge possessed by any such agent or any other person will not act as a waiver or change in any part of this policy and will not prevent the Company from asserting any rights under the provisions of this policy.

H.    **Assignment**

The interests of the **Insured** under this policy may not be assigned without the Company's express written consent.

I.    **Other Insurance**

This policy is excess over the deductible and any other valid and collectible insurance, self insurance, or indemnification agreement available to the **Insured**, whether such other insurance or agreement is stated to be primary, pro rata, contributory, excess, contingent, self-insured or otherwise, unless such other insurance is written specifically excess of this policy by reference in such other policy to the policy number in this policy's Declarations. When any other insurance has a duty to defend a **claim**, the Company will have no duty to defend the **claim**; if no such other insurance defends the **claim**, the Company will have the right but not the duty to defend the claim.

J.    **Cancellation/Nonrenewal**

1.    This policy may be cancelled by the first **Named Insured** by giving the Company written notice stating when, thereafter, such cancellation will be effective. If the first **Named Insured** cancels on any anniversary of the Effective Date of the **policy period** stated in item 2. in the Declarations, the earned premium will be calculated on a pro rata basis. If the first **Named Insured** cancels on any other date, the unearned premium will be calculated on a standard short rate basis for the year of cancellation and on a pro rata basis for any subsequent year.

2.    This policy may be cancelled by the Company for fraud, material misrepresentation or nonpayment of premium or may be nonrenewed by the Company for any reason by sending written notice to the first **Named Insured** at the last address known to the Company. The Company will provide written notice at least 60 days before cancellation or nonrenewal is to be effective, except for nonpayment of premium, in which case the Company will provide 10 days written notice prior to cancellation. The earned premium will be calculated on a pro rata basis.

3.    Notice of cancellation or nonrenewal will state the effective date and, in the case of cancellation, the reason for cancellation. The **policy period** will end on that date. If notice is mailed, proof of mailing will be sufficient notice.

IX.    **OPTIONAL EXTENSION**

A.    If this Policy is cancelled or nonrenewed by the Company or by the **Named Insured** for any reason other than fraud, material misrepresentation, or nonpayment of premium, then the **Named Insured** designated in Item 1. of the Declarations shall have the right, upon payment of an additional premium set forth below, to an extension of the coverage granted by this policy with respect to any **claim** first made against any **Insured** and reported in writing to the Company during the period of time purchased after the end of

the **policy period** corresponding to the Additional Premium paid, but only with respect to any **wrongful act or pollution condition** occurring on or after the Retroactive Date designated in Item 5. of the Declarations and before the effective date of cancellation or nonrenewal. The offer of renewal terms, conditions or premiums different from those in effect prior to renewal shall not constitute a cancellation or nonrenewal for purposes of this provision.

The additional premium for the **optional extension period** shall be fully earned at inception and based upon the rates for such coverage in effect at the beginning of the **policy term** and shall be one (1) year at 100% of the annual premium; two (2) years at 150% of the annual premium; and three (3) years at 185% of the annual premium.

B.    As a condition precedent to the right to purchase the **optional extension period**, the total premium for this policy must have been paid. The right to purchase the **optional extension period** shall terminate unless written notice together with full payment of the Additional Premium for the **optional extension period** is given to the Insurer within sixty (60) days after the effective date of cancellation or nonrenewal. If such notice and Additional Premium payment is not so given to the Company, there shall be no right to purchase the **optional extension period**.

C.    In the event of the purchase of the **optional extension period**, the entire Additional Premium for the **optional extension period** shall be deemed earned at its commencement.

D.    The limit of liability for the **optional extension period** shall be part of and not in addition to the limit of liability of the Company for the **policy period**.

E.    The **optional extension period** will not apply to any pending **claim** or proceedings, any paid **claim**, any **professional services** rendered after the effective date of the **optional extension period** or **claims** that are covered under any subsequent insurance purchased by the **Insured**, or that would be covered by such insurance but for exhaustion of the limits of liability applicable to such **claims**.

X.    **LIBERALIZATION**

If the Company adopts and files any revision to this form during the **policy period** that would broaden coverage without additional premium, the broadened coverage will apply to this policy as of the date the filed revision is effective in the state shown in the mailing address of the **Named Insured**, but it will not apply to **claims** that were first made prior to such effective date of the revision.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# RELIANCE ON ANOTHER INSURANCE COMPANY'S APPLICATION

This endorsement modifies insurance provided under the following:

PROFESSIONAL AND POLLUTION LIABILITY POLICY FOR DESIGN PROFESSIONALS

In consideration of the premium charged for the policy, it is understood and agreed that the Company has relied upon the statements in the Houston Casualty Company
Form Number: AE 002 02/04              , including materials attached thereto, completed by the **Named Insured** designated in Item 1. in the Declarations and signed and dated on 12/07/2010 by Joseph St. Martin and such application is made a part of this insurance policy and operates as the Company's own application.

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective:_____     Policy No.: _____     Endorsement No. _____

Insured: _____     Premium:_____

Insurance Company:_____

Authorized Signature:   _____

**DPAE 428  0908**                                                                                    Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOUISIANA CHANGES

1. It is hereby agreed that Section VIII., J. Cancellation/Nonrenewal is deleted in its entirety and replaced with the following:

   J.  Cancellation/Nonrenewal

    Cancellation

    1.  The first **Named Insured** shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

    2.  Notice Of Cancellation

       a.  Cancellation Of Policies In Effect For Fewer Than 60 Days Which Are Not Renewals

          If this policy has been in effect for fewer than 60 days and is not a renewal of a policy we issued, we may cancel this policy for any reason, subject to the following:

          (1)  Cancellation for nonpayment of premium

              We may cancel this policy by mailing or delivering to the first **Named Insured** written notice of cancellation at least 10 days before the effective date of cancellation.

          (2)  Cancellation for any other reason

              We may cancel this policy by mailing or delivering to the first **Named Insured** written notice of cancellation at least 60 days before the effective date of cancellation.

       b.  Cancellation Of Renewal Policies And New Policies In Effect For 60 Days Or More

          If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

          (1)  Nonpayment of premium;

          (2)  Fraud or material misrepresentation made by you or with your knowledge with the intent to deceive in obtaining the policy, continuing the policy, or in presenting a **claim** under the policy;

          (3)  Activities or omissions by you which change or increase any hazard insured against;

          (4)  Change in the risk which increases the risk of **loss** after we issued or renewed this policy including an increase in exposure due to regulation, legislation, or court decision;

          (5)  Determination by the Commissioner of Insurance that the continuation of this policy would jeopardize our solvency or would place us in violation of the insurance laws of this or any other state;

          (6)  The **insured's** violation or breach of any policy terms or conditions; or

          (7)  Any other reasons that are approved by the Commissioner of Insurance.

          We will mail or deliver written notice of cancellation under Paragraph A 2.b., to the first **Named Insured** at least:

          (a)  10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

          (b)  30 days before the effective date of cancellation if we cancel for a reason described in Paragraphs A.2.b.(2) through (7) above.

    3.  We will mail or deliver our notice to the first **Named Insured's** last mailing address known to us.

    4.  Notice of cancellation will state the effective date of cancellation. The **policy period** will end on that date.

5.  **Premium Refund**

    If this policy is cancelled, we will return any premium refund due, subject to Paragraphs C.5.a., C.5.b., C.5.c., C.5.d., C.5.e. and C.5.f. The cancellation will be effective even if we have not made or offered a refund.

    a.  If we cancel, the refund will be pro rata.

    b.  If the first **Named Insured** cancels, the refund may be less than pro rata, and will be returned within 30 days after the effective date of cancellation.

    c.  We will send the refund to the first **Named Insured** unless Paragraph C.5.d. or C.5.e. applies.

    d.  If we cancel based on Paragraph B.2. of this endorsement, we will return the premium due, if any, within 10 days after the expiration of the 10-day period referred to in B.2.c. If the policy was financed by a premium finance company, or if payment was advanced by the insurance agent, we will send the return premium directly to such payor.

    e.  With respect to any cancellation of the Commercial Auto Coverage Part, we will send the return premium, if any, to the premium finance company if the premium was financed by such company.

    f.  When return premium payment is sent to the premium finance company or the agent of the **Insured**, we will provide notice to you, at the time of cancellation, that a return of unearned premium may be generated by the cancellation.

6.  If notice is mailed, proof of mailing will be sufficient proof of notice.

**Nonrenewal**

1.  If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured, mortgageholder, pledgee or other known person shown in the policy to an insurable interest in any loss, at least 60 days before its expiration date, or its anniversary date if it is a policy written for a term of more than one year or with no fixed expiration date.

2.  We need not mail or deliver this notice if:

    a.  We or another company within our insurance group have offered to issue a renewal policy; or

    b.  You have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

3.  Any notice of nonrenewal will be mailed or delivered to the first **Named Insured**, mortgageholder, pledgee or other known person shown in the policy to have an insurable interest in any loss, at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

4.  Such notice to the insured shall include the insured's loss run information for the period the policy has been in force within, but not to exceed, the last three years of coverage.

II. It is hereby agreed that **Section III. DEFINITIONS, J. Pollution condition** is deleted in its entirety and replaced with the following:

J.  **Pollution condition** means an alleged or actual discharge, dispersal, release, seepage, migration or escape of smoke, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water, resulting from the performance of **professional services** for others by the **Insured** or by any entity or person for whom the **Insured** is legally liable. Waste includes materials to be recycled, reconditioned or reclaimed.

III.   It is hereby and agreed that **Section VIII. CONDITIONS B. Subrogation** is deleted in its entirety and replaced with the following:

    **B. Subrogation**

        In the event of any payment of any **claim** under this policy, the Company will be subrogated up to the amount the Company has paid out under the policy. The **Insured** must do everything reasonably necessary to secure these rights and must do nothing after a **claim** is made to jeopardize them.   The Company hereby waives such subrogation rights against any **Insured** under this policy, and also against the **Insured's** client to the extent that the **Insured** had, prior to the **claim** or circumstance, a written agreement to waive such rights.

IV.   It is hereby and agreed that **Section VIII. CONDITIONS E. Action Against The Company** is deleted in its entirety and replaced with the following:

    **E. Action Against The Company**

        A person or entity may bring an action against the Company including, but not limited to an action to recover on an agreed settlement or on a final judgment against the **Insured**; but the Company will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limits of insurance.   An agreed settlement means a settlement and release of liability signed by the Company, the **Insured** and the claimant or the claimant's representative.

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective:_____   Policy No.: _____   Endorsement No. _____

Insured: _____   Premium:_____

Insurance Company:_____

Authorized Signature:   _____

**DPAE 119 1108**          Includes copyrighted material of Insurance Services Office, Inc., with its permission          **Page 3 of 3**

# IN WITNESS ENDORSEMENT

## CATLIN INSURANCE COMPANY, INC.

| | |
|---|---|
| ADMINISTRATIVE OFFICE: | 3340 Peachtree Road N.E.<br>Tower Place 100<br>Suite 2950<br>Atlanta, GA 30326 |
| STATUTORY HOME OFFICE: | 1330 Post Oak Boulevard<br>Suite 2325<br>Houston, TX 77056 |

It is hereby agreed and understood that the following In Witness Clause supercedes any and all other In Witness clauses in this policy.

All other provisions remain unchanged.

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

Richard S. Banas
President

Steven C. Adams
Secretary

ABAP 400 0507

# NOTICE TO POLICYHOLDERS

# FRAUD NOTICE

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

## STATE SPECIFIC PROVISIONS

| | |
|---|---|
| **Arkansas** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Colorado** | It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable for insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies. |
| **District of Columbia** | WARNING: It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant. |
| **Florida** | Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree. |
| **Hawaii** | For your protection, Hawaii law requires you to be informed that presenting a fraudulent claim for payment of a loss or benefit is a crime punishable by fines or imprisonment, or both. |
| **Kentucky** | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime. |
| **Louisiana** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Maine** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or denial of insurance benefits. |
| **Maryland** | Any person who knowingly and willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly and willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **New Jersey** | Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties. |

# NOTICE TO POLICYHOLDERS

| | |
|---|---|
| **New Mexico** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties. |
| **New York** | **All commercial insurance forms, except as provided for automobile insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation. |
| | **Automobile Insurance forms** Any person who knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation. |
| | **Fire Insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime. The proposed insured affirms that the foregoing information is true and agrees that these applications shall constitute a part of any policy issued whether attached or not and that any willful concealment or misrepresentation of a material fact or circumstances shall be grounds to rescind the insurance policy. |
| **Ohio** | Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud. |
| **Oklahoma** | WARNING: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony. |
| **Oregon** | Any person who, with INTENT TO DEFRAUD or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement MAY BE guilty of insurance fraud." |
| **Pennsylvania** | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties. |
| | **Auto:** Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and the payment of a fine of up to $15,000. |

# NOTICE TO POLICYHOLDERS

| | |
|---|---|
| **Puerto Rico** | Any person who knowingly and with the intention to defraud includes false information in an application for insurance or file, assist or abet in the filing of a fraudulent claim to obtain payment of a loss or other benefit, or files more than one claim for the same loss or damage, commits a felony and if found guilty shall be punished for each violation with a fine of no less than five thousands dollars ($5,000), not to exceed ten thousands dollars ($10,000); or imprisoned for a fixed term of three (3) years, or both.  If aggravating circumstances exist, the fixed jail term may be increased to a maximum of five (5) years; and if mitigating circumstances are present, the jail term may be reduced to a minimum of two (2) years. |
| **Rhode Island** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Tennessee** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Virginia** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Washington** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **West Virginia** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |

## NOTICE TO POLICYHOLDERS

# PRIVACY POLICY

Catlin insurance group [the "Companies"], believes personal information that we collect about our customers, potential customers, and proposed insureds [referred to collectively in this Privacy Policy as "customers"] must be treated with the highest degree of confidentiality. For this reason and in compliance with the Title V of the Gramm-Leach-Bliley Act ["GLBA"], we have developed a Privacy Policy that applies to all of our companies. For purposes of our Privacy Policy, the term "personal information" includes all information we obtain about a customer and maintain in a personally identifiable way. In order to assure the confidentiality of the personal information we collect and in order to comply with applicable laws, all individuals with access to personal information about our customers are required to follow this policy.

### Our Privacy Promise

Your privacy and the confidentiality of your business records are important to us. Information and the analysis of information is essential to the business of insurance and critical to our ability to provide to you excellent, cost-effective service and products. We understand that gaining and keeping your trust depends upon the security and integrity of our records concerning you. Accordingly, we promise that:

1. We will follow strict standards of security and confidentiality to protect any information you share with us or information that we receive about you;
2. We will verify and exchange information regarding your credit and financial status only for the purposes of underwriting, policy administration, or risk management and only with reputable references and clearinghouse services;
3. We will not collect and use information about you and your business other than the minimum amount of information necessary to advise you about and deliver to you excellent service and products and to administer our business;
4. We will train our employees to handle information about you or your business in a secure and confidential manner and only permit employees authorized to use such information to have access to such information;
5. We will not disclose information about you or your business to any organization outside the Catlin insurance group of Companies or to third party service providers unless we disclose to you our intent to do so or we are required to do so by law;
6. We will not disclose medical information about you, your employees, or any claimants under any policy of insurance, unless you provide us with written authorization to do so, or unless the disclosure is for any specific business exception provided in the law;
7. We will attempt, with your help, to keep our records regarding you and your business complete and accurate, and will advise you how and where to access your account information [unless prohibited by law], and will advise you how to correct errors or make changes to that information; and
8. We will audit and assess our operations, personnel and third party service providers to assure that your privacy is respected.

### Collection and Sources of Information

We collect from a customer or potential customer only the personal information that is necessary for [a] determining eligibility for the product or service sought by the customer, [b] administering the product or service obtained, and [c] advising the customer about our products and services. The information we collect generally comes from the following sources:

> Submission – During the submission process, you provide us with information about you and your business, such as your name, address, phone number, e-mail address, and other types of personal identification information;

> Quotes – We collect information to enable us to determine your eligibility for the particular insurance product and to determine the cost of such insurance to you. The information we collect will vary with the type of insurance you seek;

# NOTICE TO POLICYHOLDERS

Transactions – We will maintain records of all transactions with us, our affiliates, and our third party service providers, including your insurance coverage selections, premiums, billing and payment information, claims history, and other information related to your account;

Claims – If you obtain insurance from us, we will maintain records related to any claims that may be made under your policies. The investigation of a claim necessarily involves collection of a broad range of information about many issues, some of which does not directly involve you. We will share with you any facts that we collect about your claim unless we are prohibited by law from doing so. The process of claim investigation, evaluation, and settlement also involves, however, the collection of advice, opinions, and comments from many people, including attorneys and experts, to aid the claim specialist in determining how best to handle your claim. In order to protect the legal and transactional confidentiality and privileges associated with such opinions, comments and advice, we will not disclose this information to you; and

Credit and Financial Reports – We may receive information about you and your business regarding your credit. We use this information to verify information you provide during the submission and quote processes and to help underwrite and provide to you the most accurate and cost-effective insurance quote we can provide.

## Retention and Correction of Personal Information

We retain personal information only as long as required by our business practices and applicable law. If we become aware that an item of personal information may be materially inaccurate, we will make reasonable effort to re-verify its accuracy and correct any error as appropriate.

## Storage of Personal Information

We have in place safeguards to protect data and paper files containing personal information.

## Sharing/Disclosing of Personal Information

We maintain procedures to assure that we do not share personal information with an unaffiliated third party for marketing purposes unless such sharing is permitted by law. Personal information may be disclosed to an unaffiliated third party for necessary servicing of the product or service or for other normal business transactions as permitted by law.

We do not disclose personal information to an unaffiliated third party for servicing purposes or joint marketing purposes unless a contract containing a confidentiality/non-disclosure provision has been signed by us and the third party. Unless a consumer consents, we do not disclose "consumer credit report" type information obtained from an application or a credit report regarding a customer who applies for a financial product to any unaffiliated third party for the purpose of serving as a factor in establishing a consumer's eligibility for credit, insurance or employment. "Consumer credit report type information" means such things as net worth, credit worthiness, lifestyle information [piloting, skydiving, etc.] solvency, etc. We also do not disclose to any unaffiliated third party a policy or account number for use in marketing. We may share with our affiliated companies information that relates to our experience and transactions with the customer.

## Policy for Personal Information Relating to Nonpublic Personal Health Information

We do not disclose nonpublic personal health information about a customer unless an authorization is obtained from the customer whose nonpublic personal information is sought to be disclosed. However, an authorization shall not be prohibited, restricted or required for the disclosure of certain insurance functions, including, but not limited to, claims administration, claims adjustment and management, detection, investigation or reporting of actual or potential fraud, misrepresentation or criminal activity, underwriting, policy placement or issuance, loss control and/or auditing.

## Access to Your Information

# NOTICE TO POLICYHOLDERS

Our employees, employees of our affiliated companies, and third party service providers will have access to information we collect about you and your business as is necessary to effect transactions with you. We may also disclose information about you to the following categories of person or entities:

Your independent insurance agent or broker;

An independent claim adjuster or investigator, or an attorney or expert involved in the claim;

Persons or organizations that conduct scientific studies, including actuaries and accountants;

An insurance support organization;

Another insurer if to prevent fraud or to properly underwrite a risk;

A state insurance department or other governmental agency, if required by federal, state or local laws; or

Any persons entitled to receive information as ordered by a summons, court order, search warrant, or subpoena.

## Violation of the Privacy Policy

Any person violating the Privacy Policy will be subject to discipline, up to and including termination.

For more information or to address questions regarding this privacy statement, please contact your broker.

## NOTICE TO POLICYHOLDERS

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Policyholder Notice provides information concerning the possible impact on your insurance coverage provided under your policy due to directives issued by OFAC. Please read this Policyholder Notice carefully.

OFAC administers and enforces economic and trade sanctions based on US foreign policy and national security goals based on Presidential declarations of "national emergency." OFAC has identified and listed numerous:

> Foreign agents
> Front organizations
> Terrorists
> Terrorist organizations
> Narcotics traffickers

as "Specially Designated Nationals and Blocked Persons." This list can be found on the United States Treasury's web site – http://www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated US sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance will be immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, neither payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments may also apply.

## NOTICE TO POLICYHOLDERS

# CLAIMS NOTICE

All claims must be reported to Catlin at:

**Catlin**
**3340 Peachtree Road NE**
**Suite 2950**
**Atlanta, GA 30326**

**E-mail: catlinclaims.cp@catlin.com**

**Phone: 404-443-4910\888-443-4910**
**Fax:    404-443-4912**